# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| MILORAD STOJAKOVIC,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>Defendant. | No.  14-CV-05480<br><br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Milorad Stojakovic, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 216(i) and 42 U.S.C. § 223(d). Mr. Stojakovic asks the court to reverse and remand the decision, while the Commissioner seeks an order affirming the decision.

## I.

## PROCEDURAL HISTORY

Mr. Stojakovic applied for Disability Insurance Benefits on June 26, 2011, alleging disability beginning on April 01, 2007. (Administrative Record ("R.") 131). His application was denied initially on July 25, 2011 and upon reconsideration on October 26, 2011. (R. 20-21). Mr. Stojakovic submitted a timely request for a hearing before an Administrative Law Judge ("ALJ") on December 5, 2011. (R. 89). On November 26, 2012, the ALJ convened a hearing in which Mr. Stojakovic, represented by counsel, appeared and testified. (R. 39). Additionally, Cheryl

Hoiseth testified as a vocational expert. (R. 39). Mr. Stojakovic alleged a disability beginning April 1, 2007, and a date last insured of September 30, 2009.[1] (R. 42). The ALJ issued a decision on January 25, 2013, denying Mr. Stojakovic's claim because he could have made an adjustment to other work, despite his physical limitations. (R. 8). On May 22, 2014, the Appeals Council rendered the ALJ's decision that of the Commissioner by denying Mr. Stojakovic's request for review. (R. 1). *See* 20 C.F.R. § § 404.955; 404.981. Pursuant to 42 U.S.C. § 405(g), Mr. Stojakovic appealed the Commissioner's final decision to the federal district court.

## II.

## THE EVIDENCE OF RECORD

### A.

### The Vocational Evidence

Mr. Stojakovic was born on October 18, 1954. (R. 70). He was fifty-four on his date last insured and was fifty-eight on the date of the ALJ's decision. Mr. Stojakovic is 5' 7'' tall, and weighed around 197 pounds near his date last insured. (R. 272). He has an eleventh grade education. (R. 51). As a construction laborer, Mr. Stojakovic performed such tasks as carrying, setting up, and climbing ladders and scaffolding. (R. 43). The ladders and scaffolding weighed more than fifty pounds. (R. 43). Difficulty with getting up, walking, using his right hand, and dizziness prevent him from working more than a few hours a day. (R. 43-44). Mr. Stojakovic has not worked a full day in nearly twenty years. (R. 43).

### B.

### The Medical Evidence

---

[1]20 C.F.R. § 404.131(a)("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled.").

Mr. Stojakovic has a history of diabetes mellitus, hypertension, hypercholesterolemia, coronary artery disease, peripheral artery disease, hernia repair, and mitral regurgitation. (R. 230, 281, 375). Mr. Stojakovic first visited Dr. Daniel Chen at LaGrange Hospital with complaints of chest pain on November 21, 2005 where he received a nuclear medicine myocardial perfusion test. (R. 393). On April 14, 2006, he returned to LaGrange Hospital with leg pain where a bilateral lower extremity duplex was performed. (R. 219). On January 26, 2010, an Arterial Duplex LE was performed on Mr. Stojakovic finding moderate-severe bilateral infrageniculate arterial occlusive disease below the knees with the right being worse than the left. (R. 451). On June 9, 2011, cardiologist Dr. Gibbs noted that Mr. Stojakovic presented with late effects of cardiovascular accident. (R. 438).

Mr. Stojakovic was obese through his date last insured. (R. 438). Between April 2007 and September 30, 2009, Mr. Stojakovic's weight was recorded at the Family Medical Center of LaGrange Memorial thirteen times. (R. 232-33). His weight ranged from 191 to 206 pounds. (R. 232-33). Mr. Stojakovic performed an exercise electrocardiogram test on January 24, 2010. (R. 465). Being required to walk on a treadmill, he had to stop after three minutes and forty seconds due to chest pain. (R. 465). A similar test, performed on February 22, 2010, resulted in Mr. Stojakovic having to stop walking after eleven minutes and twenty seconds due to leg pain. (R. 442). Mr. Stojakovic tested positive for vascular claudication on October 4, 2006 (R. 460), February 5, 2010 (R. 456), May 24, 2010 (R. 452), December 6, 2010 (R. 448), March 10, 2011 (R. 440), and June 9, 2011 (R. 437).

Mr. Stojakovic visited Dr. Chen on June 9, 2008, complaining of left foot and left shoulder pain. (R. 259, 382). Dr. Chen found good range of motion and muscle strength in the shoulder. (R. 259). A radiological exam indicated a possibility of inflammatory arthritis in Mr.

Stojakovic's left foot. (R. 382). Dr. Chen noted that Mr. Stojakovic was not icing his foot and was wearing sandals. (R. 258). He was instructed to ice the foot and wear the proper shoes. (R. 260). On June 18, 2008, an x-ray was taken of the left shoulder. (R. 380). The x-ray found moderate degenerative changes in the acromioclavicular joint. (R. 380). On December 9, 2008, an MRI was taken of his right shoulder due to pain. (R. 399).

Mr. Stojakovic showed no signs of dizziness on May 24, 2010 (R. 452), December 6, 2010 (R. 448), and March 3, 2011 (R. 444). On April 3, 2011, Mr. Stojakovic presented to Dr. Chen with claims of dizziness. (R. 540). Dr. Chen diagnosed him with benign positional vertigo with peripheral labyrinthine dysfunction and prescribed appropriate medication for a month. (R. 540-41). A review of his neurological system by Dr. Gibbs on June 9, 2011 revealed no dizziness. (R. 437).

During a trip to Dallas, he left his medications at home and called Dr. Chen to see if it was ok if he did not take them. (R. 275). Dr. Chen immediately called in Mr. Stojakovic's medications to a Texas pharmacist. (R. 274).

Dr. Vidya Madala, M.D., a reviewing physician with the Department of Health and Human Services determined Mr. Stojakovic was not disabled on July 25, 2011. (R. 70). That determination was affirmed by Dr. Bharati S. Jhaveri, M.D., of the same agency, on October 26, 2011. (R. 71).

## C.

### The Administrative Hearing Testimony

#### 1.

#### Mr. Stojakovic's Testimony

Mr. Stojakovic testified at his hearing on November 26, 2012. (R. 39). He performs construction work such as carrying and setting up scaffolding and ladders, which can weigh more than fifty pounds. (R. 43). Mr. Stojakovic does not possess any special carpentry skills. (R. 62). His former work consists primarily of "carrying the [heavy] stuff. . . ." (R. 62). He can ascend the scaffolding and ladders, but tries to stay on the ground if he feels oncoming spells of dizziness. (R. 44). After April 2007, Mr. Stojakovic began to struggle while climbing ladders and scaffolding and lifting objects heavier than twenty pounds. (R. 55). He experiences dizziness a few times a week. (R. 59).

Mr. Stojakovic works only a few hours a day. (R. 43). He said he does not work full-time due to difficulties associated with getting up, using his right hand, dizziness, and walking. (R. 44). He claims that raising his right hand is problematic due to weakness. (R. 50). Since April 2007, the symptoms increased in severity. (R. 55). Pain in his right side has caused minor sleeping problems. (R. 57). Beginning in April 2011, Mr. Stojakovic suffered a series of strokes. (R. 56).

Mr. Stojakovic uses a cane to help with his balance. (R. 48). When asked by the ALJ, "How long have you been using the cane," he replied, "Almost one year, I believe." (R. 47). At no point during construction work does Mr. Stojakovic use a cane. (R. 48). He claims that his right leg and back begin to bother him after ten to fifteen minutes of standing or walking. (R. 53). He holds the cane with his left hand to help with his balance. (R. 50). Strength and balance issues affect his ability to climb and descend stairs as well. (R. 59). Mr. Stojakovic claimed to weigh 183 pounds at the hearing. (R. 59).

Mr. Stojakovic lives at home with his wife and youngest son. (R. 45). His wife assists him with taking his medication. (R. 50). He experiences no side effects from his medication and

claims that it sometimes helps with his symptoms. (R. 50). Most of his time at home is spent watching television. (R. 49). However, he claims that he can only sit for thirty minutes before experiencing right leg and back problems. (R. 53). He does not do any chores around the house. (R. 48).

Mr. Stojakovic's wife does most of the grocery shopping, but occasionally he will drive to the store to pick up a few items. (R. 48). He claims that, at most, he can carry a ten-pound grocery bag. (R. 54). Driving to the store is a task that does not present him with any problems. (R. 48). However, he also claims that driving is only possible "part-time" because of his dizziness and foot pain. (R. 45-46). If the dizziness becomes problematic he has to pull over. (R. 46). He testified that he is able to control the brake and accelerator pedals with his right foot. (R. 54).

In December 2007, Mr. Stojakovic and his wife flew to Dallas for vacation. (R. 46-47). Mr. Stojakovic used his cane as he walked through the airport while his wife carried the bags. (R. 47). He was unable to carry any baggage at the airport, but the cane helped him get to the gate. (R. 47). He also traveled to Canada three or four years before testifying, and Serbia in 2011. (R. 46).

## 2.

### The Vocational Expert's Testimony

Cheryl Hoiseth, the vocational expert ("VE"), testified that Mr. Stojakovic's past work classified as heavy work, semiskilled, SVP: 4. (R. 62). The ALJ presented the VE with six hypotheticals. (R. 62-65). The first hypothetical involved an individual with an eleventh grade education, advanced age, and an ability to perform "medium work as defined by the regulations with no more than occasional overhead reaching with his left non-dominant upper extremity, and

may have no more than occasional concentrated exposure to hazards such as dangerous moving machinery or unprotected heights, and should not be expected to operate a motor vehicle as part of the job." (R. 62-63). The VE testified that such an individual would not be able to perform Mr. Stojakovic's past work. (R. 63). However, according to the VE, such an individual would be able to perform medium, unskilled work, SVP: 2. (R. 63). Jobs such as dining room attendant (3,500 jobs), food service worker (2,000 jobs) and janitor (35,000 jobs) would be available to such an individual. (R. 63).

Hypothetical three was the same as the first, "with an exertional change that the individual is limited to light work." (R. 64). Such an individual would be able to work as a cafeteria attendant (6,800 jobs), housekeeper (10,000 jobs), or hand packager (15,000 jobs). (R. 64). The last hypothetical required the VE to take either the first or third hypothetical and add in the fact that the individual needed a cane when standing or walking. (R. 65). Such an individual's residual functional capacity ("RFC") would be reduced to sedentary. (R. 65). The VE testified that an individual with Mr. Stojakovic's past work would not have any skills that would transfer to sedentary work. (R. 64).

## D.

### The ALJ's Decision

After finding that Mr. Stojakovic did not engage in substantial gainful activity during his alleged onset date through his date last insured, the ALJ discussed Mr. Stojakovic's medical impairments. Diabetes mellitus, hernia repair, and degenerative changes of the left shoulder were determined 'severe.' Mr. Stojakovic's claims of shoulder pain, plantar fasciitis, coronary artery disease, coronary stent, carotid disease, peripheral artery disease, exertional chest discomfort,

cerebral vascular accident, strokes, and positional vertigo, in combination with the medical and other evidence, were found to only have a minimal effect on Mr. Stojakovic's ability to work.

The ALJ found that the objective medical evidence, from April 1, 2007 through September 30, 2009, did not establish that Mr. Stojakovic had any impairments or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Pt. 404 Subpt. P, App. 1. Through his date last insured, Mr. Stojakovic had the residual functional capacity to perform medium work. (R. 15).

The ALJ determined that Mr. Stojakovic's claims concerning difficulties with walking, balancing, using his right hand, and spells of dizziness, which precluded him from working full-time, were not entirely credible. In making this determination, the ALJ used the all too familiar "boilerplate" language the Seventh Circuit has continuously rebuked. (R. 16)("the claimant's medically determinable impairment's could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."); *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015); *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

The ALJ discussed Mr. Stojakovic's exertional ability in relation to his claims and testimony. (R. 16-17). The ALJ noted that Mr. Stojakovic testified that his medications are effective in controlling his symptoms and produce no side effects and that there are instances in the medical record where he does not mention either his dizziness or right-sided weakness. The ALJ also mentioned that Mr. Stojakovic experiences leg and back pain after sitting for thirty minutes. The ALJ incorrectly stated that Mr. Stojakovic testified to an inability to lift eight to ten

pounds with his left hand. *See* (R. 52)(Mr. Stojakovic testifying that he could "probably" lift eight to ten pounds).

The ALJ determined that through his date last insured, Mr. Stojakovic was able to perform activities that were beyond one would expect of an individual with his physical limitations. She took into account that he flew to Dallas for vacation without incident in 2007. She also mentioned that he was able to walk through the airport with the use of his cane. The ALJ found it significant that Mr. Stojakovic had no medical complications during the trip. The ALJ further discussed how driving for twenty minutes, gripping the steering wheel, and controlling the gas and brake pedals present Mr. Stojakovic with no problems.

The ALJ then turned her attention to Mr. Stojakovic's cane. She discussed how Mr. Stojakovic uses the cane at all times, except when performing construction work. She found it interesting that Mr. Stojakovic has no problems with dizziness, weakness in his right side, or problems with his right hand when climbing ladders at work. However, Mr. Stojakovic's testimony regarding climbing ladders and scaffolding at work reveals that he tried to stay on the ground if he felt oncoming dizziness. (R. 44). He never stated that he had *no* problems when climbing ladders, only that his decisions on whether to climb ladders and scaffolding were guided by any dizziness symptoms. Because Mr. Stojakovic did not use a cane while performing construction work, the ALJ found that the cane was not medically necessary. (R. 17).

The ALJ discussed the lack of abnormalities or significant limitations present in the medical evidence regarding Mr. Stojakovic's upper right extremity. Additionally, a June 18, 2008 left-shoulder x-ray showed no abnormalities save for moderate degenerative changes in the acromioclavicular joint. Based on the medical evidence, the ALJ found no support for an allegation that Mr. Stojakovic could not lift and carry up to eight to ten pounds. However, Mr.

Stojakovic never claimed that he could not lift anything with his left hand. Rather, Mr. Stojakovic testified that *at most* he could lift eight to ten pounds with his left hand. (R. 54).

The lack of any opinion evidence from treating or examining physicians regarding Mr. Stojakovic's physical limitations factored into the ALJ's decision. She gave significant weight to the state agency consultants' determinations that insufficient evidence prior to Mr. Stojakovic's date last insured rendered him not disabled. (R. 18). She found that the substantial medical evidence in the record supported those determinations.

Ultimately, the ALJ concluded that Mr. Stojakovic did experience some pain, limitations, and restrictions from his impairments through his date last insured. However, the objective evidence showed that from April 1, 2007 through September 20, 2009, he had the residual functional capacity to perform medium work limited only by occasional overhead reaching with his left arm, exposure to dangerous, moving machinery or unprotected heights, and that he should not drive a motor vehicle for work. (R. 15, 18). Based on this conclusion, Mr. Stojakovic was not able to perform his past work in construction. (R. 19).

The VE's testimony revealed that jobs existed in the national and regional economy for individuals with Mr. Stojakovic's age, education, work experience, and residual functional capacity. These jobs included dining room attendant (3,500 jobs), food service worker (2,000 jobs) and janitor (35,000 jobs). Based on the testimony of the VE, Mr. Stojakovic could have continued to work through his date last insured. The ALJ concluded that Mr. Stojakovic is not disabled. (R. 20).

### III.

### MR. STOJAKOVIC'S CONTENTION

Mr. Stojakovic's motion for summary judgment rests upon a single proposition; the ALJ failed to take into account the VE's response to the sixth hypothetical posed at the hearing. Pl's. Mot. Summ. J. 5. He points to the VE's testimony that if the individual posed in hypothetical one or three (*see supra* Section II.C.2; R. 62-65) would have an RFC of 'sedentary' if he required a cane to stand or walk. *Id.* Mr. Stojakovic claims the ALJ failed to articulate any level of analysis of the vocational expert's opinion regarding the hypothetical. *Id.*[2]

## IV.

## DISCUSSION

### A.

### Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th

---

[2] It should be noted that this Court is confused as to whether Mr. Stojakovic intended to argue further on this point. The last sentence of the first paragraph on page five of his motion is oddly incomplete. *See* Pl's. Mot. Summ. J. 5 ("Judge Kelsey does not articulate any level of analysis of the vocational expert's opinion which").

Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for her decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not provide a written evaluation of every piece of evidence and testimony, *Pepper*, 712 F.3d at 362; *Dixon*, 270 F.3d at 1176, she cannot limit her discussion to only that evidence that supports her ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, she must explain why evidence that does not support her conclusion is rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ's decision must allow the court to assess the validity of her findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). That is, the ALJ must "provide some glimpse into her reasoning." *Dixon*, 270 F.3d at 1176. The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Id.*; *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

## B.

### The Five-Step Sequential Analysis

The term "disability" is defined in Section 423(d)(1) of the Act as a "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); *Stanley v. Astrue*, 410 Fed. Appx. 974, 976 (7th Cir. 2011); *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009).

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan*, 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997).

## V.

## ANALYSIS

### A.

### The ALJ's Credibility Determination

In determining the credibility of the claimant, the ALJ must consider the combined effects of the objective medical evidence along with the applicant's subjective statements of his symptoms, treatments used to assuage those symptoms, and the daily activities of the applicant.

*See* 20 C.F.R. § 404.1529; SSR 96–7p; *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Simila*, 573 F.3d at 517. The ALJ's credibility determination is afforded great deference and reversed only if found to be "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010); *Simila*, 573 F.3d at 517.

The ALJ improperly used the "boilerplate" language consistently condemned – but to no avail – by the Seventh Circuit in making her credibility determination. (R. 16)("the claimant's medically determinable impairment's could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."); *see Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Bjorson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012). That language does nothing but assert conclusory statements with no links to the objective evidence in the record. *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). Only perversity can account for an ALJ's refusal to abandon its use. *Mason v. Colvin*, 2014 WL 5475480, 12 (N.D. Ill 2014). But an ALJ's use of such boilerplate language is not automatically reversible error so long as she points to sufficient evidence in the record to support her credibility determination. *Gully v. Colvin*, 593 Fed. Appx. 558, 563 (7th Cir. 2014); *Pepper*, 712 F.3d at 367-68; *see Moore*, 743 F.3d at 1122 (finding that an ALJ's detailed credibility analysis provided a basis for review despite use of the boilerplate language). Here, the ALJ cannot break the shackles of that language because her illogical reliance on testimony Mr. Stojakovic never provided results in a credibility determination that ultimately rests upon a lack of objective, medical evidence.

An ALJ's credibility determination must be supported by specific facts consistent with the record. *Eakin v. Astrue*, 432 Fed. Appx. 607, 613 (7th Cir. 2011); *Larson v. Astrue*, 615 F.3d

744, 752 (7th Cir. 2010); SSR 96-7P("The reasons for the credibility finding must be grounded in the evidence . . . ."). When discussing Mr. Stojakovic's testimony in relation to her credibility determination, the ALJ frequently relied on testimony that was never offered at the administrative hearing. The ALJ twice contrasted Mr. Stojakovic's testimony regarding his inability to lift and carry up to eight to ten pounds to the lack of objective, medical evidence to support such a claim. (R. 16, 18). However, he *actually* testified that, at most, he could use his left hand to lift eight to ten pounds. (R. 52). Determining that a cane was not medically necessary for Mr. Stojakovic, the ALJ found interesting that he "testified that he has no problems with dizziness, weakness with his right side, or problems with his right hand when climbing the ladders or scaffolding at work." (R. 17). In fact, his testimony reveals that he *did* struggle with climbing ladders and scaffolding beginning in April 2007. (R. 55).

Further, the ALJ stated that Mr. Stojakovic can drive for twenty minutes without "problems using his right hand gripping the steering wheel or with his right foot controlling the gas and brake pedals." (R. 17). Mr. Stojakovic *never* mentioned his right hand in relation to any issues with driving. While he testified that he could *use* his right foot to control the pedals, (R. 54), he also testified that he continuously has problems with his "foot and the dizziness" when driving. (R. 46). He also testified that he would pull over if he felt any oncoming problems. (R. 46). Such flawed reiterations of Mr. Stojakovic's testimony cannot support the ALJ's credibility determination. Indeed, it undermines it.

Outside of the testimony (not) provided at the administrative hearing, the only remaining support offered for the adverse credibility determination is a lack of medical evidence corroborating Mr. Stojakovic's subjective allegations. The ALJ referred to an x-ray showing that "moderate degenerative changes were present at the acromioclavicular joint" in the left shoulder.

(R. 17, 380). However, the ALJ noted that the x-ray showed "no fracture, dislocation, or other acute abnormalities. . . ." (R. 17). Regarding physical limitations in Mr. Stojakovic's right arm and hand, the ALJ simply stated that the objective evidence "fail[s] to show any abnormalities or significant limitations . . . ." (R. 18).

However, an ALJ cannot reject a claimant's allegations regarding his own physical limitations or symptoms solely due to a lack of supporting, objective medical evidence. 20 C.F.R. § 404.1529(c)(2). Violation of this rule alone can result in a remand of the case. *Hall*, 778 F.3d at 691; *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015); *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). In *Thomas v. Colvin*, 745 F.3d 802, 806-07 (7th Cir. 2014), the Seventh Circuit reversed an ALJ's decision because the credibility determination rested solely upon a lack of medical evidence supporting the claimant's testimony about the severity of her symptoms. All of the other reasons offered by the ALJ to support the credibility determination were "illogical or otherwise flawed," leaving only the lack of medical evidence to discredit the claimant's testimony. *Id.* As in *Thomas*, the only evidence that can logically be linked to support the ALJ's credibility determination is a lack of objective, medical evidence. Thus, Mr. Stojakovic's case must be remanded because the credibility determination violates 20 C.F.R. § 404.1529(c)(2) and the law of the Seventh Circuit. *Thomas*, 745 F.3d at 806-07.

Further troubling is the evidence the ALJ relies upon to support her decision regarding Mr. Stojakovic's RFC. The determination regarding a claimant's RFC must be based upon relevant evidence in the record, while taking into account contrary lines of evidence. SSR 96-8p. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). Failure to support an RFC finding with substantial evidence will not allow a reviewing court to assess the validity of an ALJ's findings. *See Murphy*, 759 F.3d at 818(ALJ's finding that claimant could perform light work deemed

inadequate due to claimant's testimony regarding an inability to lift objects in excess of twenty pounds); *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)("logical bridge" requirement not satisfied when ALJ does not connect the dots between claimant's impairments and RFC finding).

The ALJ erred by discounting Mr. Stojakovic's complaints of limitations and pain by referencing his ability to perform menial, effortless, and rather irrelevant activities. The ALJ found that Mr. Stojakovic was capable of performing, with limitations regarding his left arm and operating a motor vehicle, medium work through his date last insured. (R. 15); *see* 20 C.F.R. 404.1567(c)("Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty five pounds."). By relying on activities that require little to no physical effort, the ALJ's RFC finding is not supported by substantial evidence and remand is required. *Rodriguez v. Colvin*, 2015 WL 394098, 5 (N.D. Ill. 2015); *see Scrogham v. Colvin*, 735 F.3d 685, 700-01 (7th Cir. 2014)(performing household chores is not "substantial evidence" that one can return to full-time work); *Beardsley v. Colvin*, 758 F.3d 835, 838 (7th Cir. 2014)(activities such as cooking and playing cards do not support an ALJ's conclusion that claimant can return to full-time work); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)(weekly grocery shopping cannot contradict a claimant's allegations of disabling pain).

The ALJ regarded Mr. Stojakovic's lack of any complications during a vacation to Dallas as significant, but she did not explain how this shows that he can perform "medium work." (R. 17). Also puzzling is the ALJ's statement that Mr. Stojakovic experienced no difficulties walking through the airport while using a cane. (R. 17). How either of these episodic, non-recurring, and presumably leisurely activities is evidence of Mr. Stojakovic's ability to lift heavy objects is a mystery. Significantly, Mr. Stojakovic testified that his wife carried all of the bags on that trip

(R. 47), a point ignored by the ALJ. His *inability* to lift and carry objects only furthers the distance between the ALJ's relied-upon evidence and her conclusion that he can perform "medium work."

The ALJ also inexplicably factored in a face-to-face interview Mr. Stojakovic had with the Field Office of the Social Security Administration. (R. 17). However, the resulting Disability Report shows only that at the time of the interview, Mr. Stojakovic did not have any difficulty sitting, standing, or walking. (R. 156). Again, the ALJ refers to insignificant activities to support a physically demanding RFC. When such illogical flaws permeate the reasoning of an ALJ, the decision simply cannot be upheld. *Scrogham*, 735 F.3d at 701; *Carradine v. Barnhart*. 360 F.3d 751, 756 (7th Cir. 2004).

The ALJ regarded Mr. Stojakovic's ability to drive for twenty minutes as "significant" to her findings, but failed to articulate how such evidence supports a conclusion that he can perform "medium work." (R. 17). It is certainly not self-evident considering that "medium work" requires one to continuously lift objects weighing over twenty-five pounds. She also references one portion of a medical report that states Mr. Stojakovic feels "fine while sitting or driving." (R. 17). Further review of the aforementioned report, however, reveals that Mr. Stojakovic also experienced dizziness and lightheadedness. (R. 266). Not only does the ALJ fail to rationally articulate how sitting or driving translates into an individual's ability to lift objects in excess of twenty-five pounds, she completely ignores a line of evidence that contradicts her ultimate finding. Such an unexplained conclusion is exactly what *Sarchet* warned against. Thus, the "logical bridge" requirement has not been satisfied and remand is required.

Notably absent from the ALJ's RFC finding is any mention of Mr. Stojakovic's leg and foot pain. An ALJ is required to take into account the combined effect of a claimant's physical

impairments. 20 C.F.R. § 404.1523; *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Mr. Stojakovic testified multiple times that his leg and foot pain sometimes restricts him from performing activities such as walking, (R. 53), standing, (R. 53), and driving, (R. 45-46). The medical evidence supports these claims of pain. He tested positive for vascular claudication five times between February 5, 2010 and June 9, 2011. (R. 456, 452, 448, 440, 437). On February 22, 2010, Mr. Stojakovic underwent an exercise electrocardiogram test. After walking for eleven minutes and twenty seconds, he stopped due to leg pain. (R. 442). Additionally, a radiological exam indicates that Mr. Stojakovic may have inflammatory arthritis in his left foot. (R. 382). Yet the ALJ's reasons supporting the RFC determination make no mention of either Mr. Stojakovic's testimony or the corresponding medical evidence. Particular attention should be paid to the combined effects of Mr. Stojakovic's physical impairments on remand. *See* 20 C.F.R. § 404.1545(RFC is "based on all of the relevant medical and other evidence.").

Briefly turning to Mr. Stojakovic's sole claim regarding the ALJ's failure to take into account the VE's response to hypothetical six, he has not sufficiently established in the record that a cane is medically necessary and his argument is without merit. "To find that a [cane] is medically required, there must be medical documentation establishing the need for a [cane] to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9P. There is no evidence in the record that establishes Mr. Stojakovic's use of a cane as medically necessary. *See e.g.* (R. 540)(medical report dated April 3, 2011 noting Mr. Stojakovic "walks unassisted."). Further, his use of a cane is not probative of his actual need for the cane. *Eakins v. Astrue*, 432 Fed. Appx. 607, 613 (7th Cir. 2013); *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir.

2009). Thus, the ALJ's finding regarding the medical necessity of a cane was proper.[3] *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Without a finding that a cane is necessary, the sixth hypothetical posed to the VE is effectively moot. *Latkowski v. Barnhart*, 267 F. Supp. 2d 891, 904-05 (N.D. Ill. 2003) aff'd 93 Fed. Appx. 963 (7th Cir. 2004)("The ALJ . . . was not required to discuss the VE's answer's to a hypothetical based on facts [the ALJ] did not credit."); *see Thompson v. Colvin*, 575 Fed. Appx. 668, 677 (7th Cir. 2014)("the hypothetical questions that the ALJ posed appropriately were based on the limitations that he accepted as credible.").

## B.

## Mr. Stojakovic's Obesity

Mr. Stojakovic never, in this court or at the administrative level, raised the issue of his weight or how it affected his ability to perform basic work activities through his date last insured and has waived the issue.[4] *Thompson*, 575 Fed. Appx. at 675; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Still, some further discussion may be appropriate as this is a thorny issue in the Seventh Circuit. *See e.g. Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014)("There is more that's wrong with the administrative law judge's decision, including his failure, which continues to be endemic in the Social Security Administration's disability adjudications despite our frequent criticisms of it . . . to consider the bearing of obesity, even when not itself disabling,

---

[3] It must be noted that while the ALJ's determination regarding the medical necessity of a cane was correct, her reasoning contained *clear* misstatements of the record and should be reconciled upon remand. *See, supra*, p. 8-9,16; (R. 17).

[4] The Commissioner could have argued the issue was waived. But she did not do so and thus she waived the waiver argument. *Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008) (Easterbrook, J.)(The beneficiary of a waiver can explicitly and consciously surrender the benefit of the waiver). It is only out of an abundance of caution and a concern for waste of judicial resources that we add the obesity question to the list of things to consider on remand. Recently, the Commissioner moved under Fed. R. Civ. P. 60(b) and 62.1 for an order remanding a case for consideration of obesity – inter alia – where the claimant had waived the issue. This came a year after the ALJ's decision was upheld and nine months after the claimant appealed the case to the Seventh Circuit. *See Triplett v. Colvin*, 2014 WL 4978658 (N.D. Ill. 2014).

on a claimant's ability to work."); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014)("The administrative law judge gave meager attention to the plaintiff's obesity on the ground that "the record does not support an inability to ambulate effectively." We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination.").

From April 2007 through his date last insured, Mr. Stojakovic was obese. (R. 232-33); (R. 438)("The patient is an obese male."). A Body Mass Index ("BMI") of at least 30.0 constitutes obesity. SSR 02-1P. During that period of time, his BMI ranged from 29.9 to 32.3.[5] However, at the time of his administrative hearing, he weighed 183 pounds giving him a BMI of 28.7. (R. 59). Thus, he was "overweight," not "obese" at that time. SSR 02-1P.

SSR 02-1P instructs that obesity may, in combination with other impairments or singly, meet or equal the requirements listed in the Commissioner's regulations. However, it is also true that a failure to consider a claimant's obesity may be harmless error. *Pepper*, 712 F.3d at 364; *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Prochaska*, 454 F.3d at 737. This is especially true when the claimant fails to explain how his obesity aggravated his condition and rendered him disabled. *Mueller v. Colvin*, 524 Fed. Appx. 282, 286 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Without contending how his obesity affected his physical limitations or ability to work, Mr. Stojakovic gave the ALJ no reason to assess the issue. SSR 02-1P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.").

But even if there was an error, harmless best describes the ALJ's failure to consider Mr. Stojakovic's obesity. The fact that he was not even obese at the time of the administrative

---

[5] Mr. Stojakovic's weight was recorded thirteen times during this period. Only once (February 11, 2009), did his recorded weight reflect a BMI below thirty (191 pounds; BMI of 29.9).

hearing further supports such a conclusion. Still, prudence dictates the issue be addressed on remand. Any effects Mr. Stojakovic's weight may pose to his ability to work should be addressed.

## CONCLUSION

Mr. Stojakovic's motion for summary judgment is GRANTED, and the case REMANDED for further proceedings not inconsistent with this opinion.

**ENTERED:**_____

                **UNITED STATES MAGISTRATE JUDGE**

**DATE:** 5/1/15